USCA1 Opinion

 

 July 5, 1994 [Not for Publication] [Not for Publication] United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 93-1643 ARTURO M. RIOS, Plaintiff, Appellant, v. EL FENIX DE PUERTO RICO, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Justo Arenas, U.S. Magistrate Judge] _____________________ ____________________ Before Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ M. Martinez Umpierre for appellant. ____________________ Juan B. Soto-Balbas with whom Mercado & Soto was on brief for ____________________ _______________ appellee. __________________ __________________ Per Curiam. Plaintiff-appellant Arturo M. Rios Per Curiam. ____________ brought an action against defendant-appellee El Fenix de Puerto Rico Compania de Seguros charging that defendant insurance company failed to repair and/or compensate plaintiff for damages to his insured yacht. Plaintiff now appeals the decision of the magistrate judge, in defendant's favor. After careful consideration, we reverse and remand. I. I. __ FACTUAL BACKGROUND AND PRIOR PROCEEDINGS FACTUAL BACKGROUND AND PRIOR PROCEEDINGS ________________________________________ Plaintiff, a Florida resident, is the owner of a 53- foot Norseman Flybridge Sport Fishing yacht named the "Lady Myrna." Plaintiff insured the craft with defendant, a duly licensed insurance company of Puerto Rico. The policy, issued on May 17, 1990, provided that defendant would pay for direct and accidental loss up to $280,000.00 for damages to the watercraft and equipment "required to be on board for the operation and maintenance of the watercraft." The policy further provided that the defendant would pay the full $280,000.00 to plaintiff "if the insured watercraft and its equipment are completely lost, or if the reasonable expense of recovering and repairing the property exceeds the amount of insurance." While en route from St. Petersburg, Florida, to Puerto Rico, the Lady Myrna was hit by rogue waves four to five miles off the northwestern coast of Puerto Rico, -2- 2 resulting in extensive structural damage and flooding. According to the engineer on board, the engine room filled with twelve inches of sea water, which in turn was picked up and sprayed throughout the engine room by the crank shafts. The crew managed to make emergency repairs and to guide the vessel safely into the port of Arecibo, Puerto Rico. Pursuant to his policy obligation, plaintiff immediately notified defendant of the damage to the vessel. Defendant thereafter dispatched Arturo Vaello, a marine surveyor for Action Adjustment Bureau, Inc., to Arecibo. Arturo Vaello, accompanied by his father, Guillermo Vaello, assessed the damages to the Lady Myrna and made temporary repairs. Then, over plaintiff's express objection, Arturo Vaello took control of the yacht and authorized that it be transported under its own power to Vaello's father's shipyard (the Vaello Shipyard) in Catano, Puerto Rico, for an assessment of permanent repairs. Plaintiff, who was uncomfortable with the choice of the Vaello Shipyard, requested the alternative dry dock facilities of Isleta Marina in Fajardo, Puerto Rico, or, alternatively, San Juan Marina in San Juan, Puerto Rico. Arturo Vaello refused and sent the yacht to his father's shipyard in Catano. In the following weeks, plaintiff sent a series of letters addressed to and acknowledged by defendant, clearly expressing his objection to having the repairs performed at -3- 3 the Vaello Shipyard. Plaintiff was convinced that the Vaello Shipyard did not have the necessary expertise to repair wooden custom-built crafts like the Lady Myrna. Defendant disagreed and authorized Arturo Vaello to begin permanent repairs to the hull of the Lady Myrna. Defendant never authorized any work to be performed on the engine or electrical systems because, in its opinion, the only damage the yacht sustained was to its hull. In time, the hull repairs were completed and defendant paid the Vaello Shipyard approximately $119,000.00 for its work. Plaintiff refused to retrieve the yacht, arguing that 1) defendant illegally took possession of the Lady Myrna, 2) while in defendant's possession, her hull had been negligently repaired causing further structural damage, and 3) the engines and electrical system had corroded and become a fire hazard because defendant failed to disassemble and flush the same after they were exposed to the salt water. On June 24, 1991, plaintiff commenced this action in the United States District Court for the District of Puerto Rico. In his complaint, plaintiff charged defendant with 1) breach of its insuring agreement, 2) conversion, 3) negligence, and 4) constructive loss. On July 6, 1992, the district court, pursuant to motions filed by both parties, ordered the case referred to a federal magistrate judge. -4- 4 After listening to evidence for one day, the magistrate judge entered judgment in favor of defendant. In his written order, the magistrate judge found that a clause in the marine insurance policy provided the necessary authorization for defendant to take possession of the vessel and make repairs without first seeking the consent of plaintiff. Therefore, according to the magistrate judge, because defendant was legally in possession of plaintiff's yacht, plaintiff's conversion claim must necessarily fail. Moreover, despite a finding that defendant had not fully repaired the insured craft while it was in defendant's possession, the lower court ruled that 1) plaintiff failed to make out a negligence claim, and 2) plaintiff was not entitled to damages because he had failed to present evidence of the amount of money needed to return the yacht to its former condition. It is from these rulings that plaintiff now appeals. II. II. ___ DISCUSSION DISCUSSION __________ Plaintiff argues, inter alia, that the lower court _____ ____ erred in interpreting the "Option of Repair" clause in the marine insurance policy as providing defendant with authorization to make repairs to the Lady Myrna.1 More ____________________ 1. In his conclusion of law number 5, the magistrate judge ruled that -5- 5 specifically, plaintiff avers that the plain language of the clause merely gives defendant the right to limit the cost and type of repairs an insured may make to a boat with a particular type of hull, and does not give defendant carte blanche to decide where, when and how to repair an insured vessel. We agree with plaintiff. In Puerto Rico, interpretation of insurance contracts is governed by P.R. Laws Ann. tit. 31, 3471 (1991), which states in relevant part that if the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of the stipulations shall be observed. Because the "construction of an insurance policy is a question of law, and the legal conclusions of the district ____________________ [t]he policy provides that the insurer has an option of repairing the hull of the insured watercraft instead of making payment for insured damages. (Marine Insurance Policy-"Our Option to Repair" Clause at 3.) It is clear that plaintiff had already consented to having the defendant repair the hull. After plaintiff placed the vessel in the hands of the insurer to determine the damages and make the repairs, it was not necessary to request again plaintiff's consent before taking the vessel to the Vaello Shipyard. Therefore, plaintiff is not entitled to recover damages for the alleged conversion of its vessel. -6- 6 court are of course, not binding on the court of appeals," Nieves v. Intercontinental Life. Ins. Co. of Puerto Rico, 964 ______ ______________________________________________ F.2d 60, 63 (1st Cir. 1992), we review insurance contract constructions de novo. __ ____ We begin by noting that the hull of the Lady Myrna is constructed of carvel-planked mahogany with mahogany frames. Thus, under the express terms in the "Option of Repair" clause, which only covers hulls "made in whole or in part of plywood, plastic, fiberglass, metal or other molded material," the clause does not apply in this case.2 Nor does the clause give rise to an inference that the parties intended to allow the insurer to step in, take possession and decide who should make the repairs and what should be repaired. By its very language, i.e., "we have the option of limiting payment to the reasonable cost of applying suitable patches, in accordance with good repair practice, to the damaged area," the clause merely gives the insurer, under certain circumstances, the option of limiting its reimbursement to the cost of patches rather than full ____________________ 2. The "Option of Repair" clause states: If the hull of the insured watercraft is made in whole or in part of plywood, plastic, fiberglass, metal or other molded material, we have the option of limiting payment to the reasonable cost of applying suitable patches, in accordance with good repair practice, to the damaged area. -7- 7 replacement of a hull. This is a fair position for the insurance company to take given the properties of the enumerated hull materials. Defendant does not argue, nor could it on the record before us, that it had plaintiff's permission to repair the yacht and have the repairs performed at the Vaello Shipyard. On the contrary, defendant concedes that plaintiff objected to its choice of shipyard and insisted on having the repairs performed elsewhere. Therefore, because defendant took possession of plaintiff's yacht against plaintiff's express wishes, defendant acted at its own peril. We need go no further. Because we find that this error of law so infected the magistrate judge's dismissal of the conversion, negligence, breach of contract and constructive loss claims, we remand the entire case for retrial. III. III. ____ CONCLUSION CONCLUSION __________ For the foregoing reasons, the judgment of the lower court is Vacated and remanded for further proceedings Vacated and remanded for further proceedings ___________________________________________________ consistent with this opinion. consistent with this opinion. _____________________________ -8- 8